IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SYCHEEKIA PETERS, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-24-00085-JD |
| LOCKHART MORRIS & MONTGOMERY, INC., | ) ) ) ) |
|     Defendant. | ) ) |

**ORDER**

Before the Court is Plaintiff Sycheekia Peters' ("Peters") Motion to Remand ("Motion") [Doc. No. 6]. Defendant Lockhart, Morris, & Montgomery, Inc. ("Lockhart") filed a Response [Doc. No. 10], and Peters filed a Reply [Doc. No. 11]. For the following reasons, the Court denies the Motion.

**I.     BACKGROUND**

Peters applied for a mortgage but was denied. Her mortgage report reflected a $683.00 debt allegedly owed to Questcare EM Oklahoma, LLC, which Lockhart, a consumer debt collector, sought to collect. Peters mailed a dispute letter to Lockhart via certified mail requesting validation of the debt. In the letter, Peters told Lockhart that the only convenient way to contact her was by email. She also provided her email. After Lockhart received the letter, it sent Peters verification of her debt by mail—not email— and attempted to collect the debt.

Peters filed suit against Lockhart in the District Court of Oklahoma County for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). She

claimed she "suffered actual damages as a result of [Lockhart's] illegal collection tactics . . . in the form of invasion of privacy, [intrusion] upon [seclusion], personal embarrassment, loss of productive time, emotional distress, frustration, anger, humiliation" and "other negative emotions." [Doc. No. 1-3 at 5]. Lockhart removed the case to this Court.

## II.  LEGAL STANDARD

A case may be removed to federal court if it is one over which the federal courts have original jurisdiction. 28 U.S.C. § 1441(a). Original jurisdiction includes federal question jurisdiction—i.e., cases "arising under" federal law. *Gilmore v. Weatherford*, 694 F.3d 1160, 1170 (10th Cir. 2012) (quoting 28 U.S.C. § 1331). Because federal courts are limited tribunals, "statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed . . . ." *Pritchett v. Off. Depot Inc.*, 420 F.3d 1090, 1094–95 (10th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (citations omitted)).

## III.  ANALYSIS

Peters argues the Court does not have subject matter jurisdiction over this case because her injury was not sufficiently "concrete" to satisfy Article III standing under *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). She contends that her "[p]etition alleges a statutory violation of the FDCPA, but does not complain of any harm suffered

2

other than the deprivation of her statutory rights." [Doc. No. 6 at 4]. In contrast, Lockhart, as the party asserting jurisdiction, maintains that Peters has standing.

To have standing, it must be shown "'(1) [the plaintiff] suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190 (10th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Because Article III's standing requirement "is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 340–41; *see also Seale v. Peacock*, 32 F.4th 1011, 1020 (10th Cir. 2022) ("Applying this standard, the Supreme Court has identified 'reputational harms, disclosure of private information, and intrusion upon seclusion' as examples of concrete, intangible harms") (quoting *TransUnion*, 594 U.S. at 425); *cf. Susinno v. Work Out World Inc.*, 862 F.3d 346, 351–52 (3d Cir. 2017) (explaining that the close relationship to a harm traditionally providing a basis for a lawsuit in English or American courts "does not require that the newly proscribed conduct would give rise to a cause of action under common law" but that it "protect the same interests implicated in the traditional common law cause of action" (internal quotation marks and citation omitted)).

The FDCPA states:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with

3

> the collection of any debt . . . at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location . . . .

15 U.S.C. § 1692c(a)(1). "The FDCPA limits how debt collectors can pursue certain types of debt and creates a private right of action when they violate those limitations . . . . But to invoke that right, 'a violation of a legal entitlement alone is insufficient.'" *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 827 (10th Cir. 2022) (quoting *Laufer v. Looper*, 22 F.4th 871, 878 (10th Cir. 2022)). In *TransUnion*, a Fair Credit Reporting Act case, the Supreme Court explained that "[f]or standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." 594 U.S. at 426–27. Specifically, it concluded that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id.* at 434. However, traditional tangible harms, like physical and monetary injury to the plaintiff, "readily qualify as concrete injuries under Article III." *Id.* at 425. Intangible harms can also be concrete, and those harms that traditionally have been recognized as providing a basis for lawsuits include "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*

Here, the injury Peters alleges is invasion of privacy and intrusion upon seclusion. "At common law, courts readily recognized a concrete injury arising from the tort of

4

intrusion upon seclusion—a tort protecting against defendants who intrude into the private solitude of another." *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191 (10th Cir. 2021); *see also TransUnion*, 594 U.S. at 424 (explaining that courts should ask "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury" but it "does not require an exact duplicate"). The Tenth Circuit has held that a plaintiff who received one unwanted phone call "about her alleged debt could pursue an FDCPA claim because her harm was analogous to the tort of intrusion upon seclusion. Although a single call may have been insufficient for traditional tort liability, it was still the same kind of harm, *i.e.*, an intrusion into her privacy." *Shields*, 55 F.4th at 829 (citation omitted); *see Lupia*, 8 F.4th at 1192 ("Though a single phone call may not intrude to the degree required at common law, that phone call poses the same *kind* of harm recognized at common law—an unwanted intrusion into a plaintiff's peace and quiet.").

Admittedly, Peters received an unwanted letter, not an unwanted phone call that she did not answer, like Ms. Lupia. But § 1692c appears to "'elevate a single unwanted message to the status of a legally cognizable injury, and it pertains to consumer privacy such that its purpose is at least partly to prevent the kinds of harm associated with invasion of privacy torts like intrusion upon seclusion.'" *Leichliter v. Optio Sols., LLC*, 672 F. Supp. 3d 1165, 1172 (W.D. Okla. 2023) (quoting *Vazzano v. Receivable Mgmt. Servs., LLC*, No. 3:21-CV-0825-D, 2022 WL 17406317, at *3 (N.D. Tex. Dec. 2,

2022)).[1] This, coupled with the Tenth Circuit's holdings in *Lupia* and *Shields*, persuades the Court that the alleged injury is sufficiently concrete for purposes of Article III standing in this FDCPA context.

### IV.     CONCLUSION

At this point, the Court is satisfied it has subject matter jurisdiction over this case. *See Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006) ("[A] plaintiff must maintain standing at all times throughout the litigation for a court to retain jurisdiction." (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1315 (10th Cir. 1997))). It therefore denies Peters' Motion to Remand. [Doc. No. 6].[2]

IT IS SO ORDERED this 13th day of September 2024.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[1] *See Lupia*, 8 F.4th at 1192 (explaining that while the common law offers guidance to analogize the kind of harm, it does not set the limits of Congress's power to identify harms and recognizing that "[i]n enacting the FDCPA, Congress recognized that abusive debt-collection practices may intrude on another's privacy interests") (citations omitted).

[2] The deadlines and requirements set forth in the Court's Order [Doc. No. 9] apply. The Court reminds the parties that it expects them to confer over the remaining Motion to Dismiss [Doc. No. 4], seek to resolve the motion and the overall litigation, and promptly notify the Court if there is any resolution. Otherwise, the deadlines in [Doc. No. 9] apply, and the Court reminds Plaintiff that failure to timely respond to the Motion to Dismiss will deem that motion confessed under Local Civil Rule 7.1(g) and the Court may dismiss the action for failure to prosecute or comply with the Court's orders.